UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Eric Lynon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25 CV 5564 |
| v. | ) | |
| | ) | Hon. April M. Perry |
| Ill. Dept. of Corr., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Eric Lynon, a parolee, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, primarily complaining about the conditions at a halfway house where he was placed on parole. Plaintiff has paid the filing fee. On August 26, 2026, the Court dismissed Plaintiff's original complaint without prejudice for failure to state a federal claim. *See* Doc. 14. Now before the Court is Plaintiff's amended complaint for initial review under 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, the Court dismisses the amended complaint without prejudice for failure to state a federal claim upon which relief may be granted. Failure to submit a proposed second amended complaint that states a federal claim consistent with this order by February 6, 2026 will result in dismissal of this case with prejudice for failure to state a federal claim. The Clerk is directed to send Plaintiff a blank amended complaint form and a copy of this order.

**LEGAL STANDARD**

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the facts alleged must show there is "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

**FACTUAL BACKGROUND**

Plaintiff brings claims under the First, Fifth, Eighth, and Fourteenth Amendments for events that occurred between May 2024 and March 2025. Doc. 16 at 5. Plaintiff's amended complaint, like his previous complaint, is not a model of clarity and contains dense and convoluted allegations regarding his conditions of confinement at a transitional housing site, the violation of

his parole, and his ability to challenge his state-court conviction. Plaintiff seeks to sue the Illinois Department of Corrections, IDOC Parole Commander Rixie Davis, IDOC Coordinator of Sex Offender Services Stephany Trejos, Manager for Sex Offender Services Sarah Brown-Foiles, IDOC Acting Director Latoya Hughes, IDOC Chief Financial Officer James Deen, IDOC Chief Legal Counsel Robert L. Fanning, and the President of Hand-N-Hand Outreach, Eliseah Williams-Dixon.

Plaintiff's complaint largely concerns the conditions of his confinement at Hand-N-Hand Outreach, a transitional housing provider. *Id.* Plaintiff alleges that the halfway house had dozens of building code violations, including plumbing, electrical, fire code, occupancy code, sanitation, and structural violations. *Id.* He alleges that this violated Illinois premises liability laws. *Id.* Plaintiff further alleges that Hand-N-Hand Outreach was "negligent in lacking proper management and oversight" and that these violations of state law and local ordinances form the basis of his Eighth Amendment claim. *Id.*

Specifically, Plaintiff alleges that he and other residents of the halfway house were bitten by bedbugs and spiders, had "falling down poorly and illegally constructed staircases and uneven floors," were exposed to radon, black mold, and sewer gases, and lived with "negligent security" such that personal property was stolen. *Id.* at 6.

Plaintiff alleges that although a number of parolees had infectious diseases including HIV, parolees shared the same toilets, showers, and food "without serious oversight." *Id.* Plaintiff contends that parolees were exposed to "unsanitary conditions of urine, feces, and semen all throughout this overcrowded living space." *Id.* Plaintiff states that he was "constantly sexually harassed" by sex offenders while living at the halfway house, apparently because these residents had the duty of patrolling while residents slept. *Id.* at 6-7.

Plaintiff alleges that the overcrowded facility made it "nearly impossible" to concentrate on preparing his legal documents, violating his right to due process. *Id.* at 7. The facility was extremely hot in the summer, despite the presence of fans, which Plaintiff alleges "merely circulated hot dusty mildew air." *Id.*

Plaintiff alleges that these conditions exacerbated his hypertension and caused migraines and "extreme stress" and contributed to him failing his parole plan. *Id.* Plaintiff does not state how long he lived at Hand-N-Hand, but documents attached to his original complaint indicate that he was released from state custody on May 21, 2024, and lived at Hand-N-Hand until he relocated to Amer Living on Oct. 8, 2024. *See* Doc. 1 at 88.

Plaintiff also contends that the conditions at Hand-N-Hand violated his Fourteenth Amendment right to equal protection because sex offenders "should have the same housing safety standards" as incarcerated prisoners or other parolees. Doc. 16 at 13. Plaintiff alleges that he went "nearly two months without a restroom" while living at Hand-N-Hand, *id*., although he subsequently alleges that he had to share a toilet with 18 other parolees "violating local building and fire codes." *Id.* He also alleges that he had to use "a dilapidated basement restroom abounding with black mold, spiders, mice, bedbugs and occasionally maggots" and at times had to use an outdoor hose to wash. *Id.*

As to Defendant Davis, Plaintiff alleges that he approved Hand-N-Hand Outreach as a parole site and "failed to inspect and ensure that this parole site was safe and secured." *Id.* at 8. Specifically, Plaintiff alleges that Davis knew or should have known of the building code violations at the halfway house before placing Plaintiff there, and that Davis continued to use the same housing vendor after Plaintiff alerted him to the problems at Hand-N-Hand. *Id.* Plaintiff further alleges that Davis violated his right to due process by failing to process his grievances. *Id.* Plaintiff also alleges that Davis retaliated against Plaintiff for filing complaints, including by violating his parole, causing Plaintiff to return to prison for two months. *Id.*

As to Defendant Trejos, Plaintiff alleges that she approved the Hand-N-Hand Outreach parole site despite knowing that it was not in compliance with "local, state and federal building, sanitary, health and fire safety codes." *Id.* at 9. Plaintiff alleges that he complained to Trejos about the conditions there, including by providing the case numbers of building code violation proceedings, but she did not respond. *Id.* Plaintiff contends that Trejos continued to make monthly payments to the parole site under the state contract even after Plaintiff alerted her to the problems at the site. *See id.* Additionally, Plaintiff contends that Trejos conspired with Davis to unlawfully revoke his parole in retaliation for complaints Plaintiff had made about her through the Illinois Court of Claims, Illinois Auditor General, Illinois Comptroller, and Illinois Inspector General "concerning violation of state housing vendor contract that caused the petitioner to lose his employment." *Id.* at 9-10.

Plaintiff alleges that the building code violations caused him to lose his job because all residents at Hand-N-Hand had to relocate to a new parole housing site that was more than four hours away from his job. *Id.* at 10. The Court observes that it is unclear how this is so, given that both parole sites at which Plaintiff was housed (Hand-N-Hand and Amer Living) are within the City of Chicago. In any event, Plaintiff alleges that Trejos gave Plaintiff an extension of time to find a new job, but his parole was violated anyway. *Id.*

Plaintiff further alleges that his parole was violated because he failed to enroll in sex offender treatment as required, which he did not want to do because he is challenging his conviction and believed that such treatment violated his Fifth Amendment rights. *Id.* Plaintiff alleges that the treatment provider told him he would need to take a lie-detector test, which he could not afford because he lost his employment due to the building-code violations that forced him to leave Hand-N-Hand. *Id.* at 10-11.

Records attached to Plaintiff's original complaint indicate that Plaintiff received a parole violation report while being housed at Amer Living because he failed for 244 days to find viable employment or community assistance toward finding a self-hosting site or family living space, and because he failed to complete sex offender treatment. *See* Doc. 1 at 88-92. The Prisoner Review Board revoked Plaintiff's parole by order of March 11, 2025, due to the lack of a host site. *Id.* at 91.

As to Defendant Brown-Foiles, Plaintiff alleges only that she is being sued "as [a] senior management member of the sex offender management board and supervisor of defendant Stephany Trejos" because she "holds responsibility over subordinate staff." Doc. 16 at 12. As to Defendant

Hughes, Plaintiff similarly alleges that she "has a duty and responsibilities over subordinates thus their actions are imputed onto her." *Id.* As to Defendant Deen, Plaintiff faults him for approving the contract with Hand-N-Hand through his position as IDOC Chief Financial Officer, and "fail[ing] in his duty to report and enforce compliance with the contract" by Hand-N-Hand. *Id.* Plaintiff alleges that Defendant Fanning, as IDOC Chief Legal Counsel, "failed to enforce the terms of the contract" with Hand-N-Hand. *Id.* at 13. Finally, Plaintiff alleges that Defendant Williams-Dixon, the owner or president of Hand-N-Hand, "violated her state contractual duties for housing parolees under Illinois state custody." *Id.* Apparently referring to social media posts by Williams-Dixon, Plaintiff alleges that she touts herself as a "transitional housing guru" while "violat[ing] dozens of state and local housing laws to enrich herself at the expense of parolees trying to re-integrate back into society." *Id.*

Plaintiff also alleges that the contract he signed upon his parole for the Intensive Community Reintegration Program (ICRP), which offers transitional housing and services to paroled sex offenders, "created detriments" for Plaintiff in his ability to access the courts to challenge his criminal conviction. *Id.* at 14. It is unclear how Plaintiff alleges this occurred, but he apparently contends that IDOC officials failed to recognize that his reintegration plan included challenging his criminal conviction. *Id.*

## ANALYSIS

Despite all of the factual allegations in the amended complaint, it does not state a federal claim upon which relief may be granted. Problems with the complaint include both the defendants Plaintiff has sued and the claims Plaintiff has brought.

The Court begins with the defendants Plaintiff has chosen to sue. First, Plaintiff cannot maintain a suit against the Illinois Department of Corrections because it is a state government agency. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (neither a state nor state officials in their official capacities are "persons" suable under § 1983); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment barred claim against state Department of Corrections). For the same reasons, Plaintiff cannot sue employees of IDOC in their professional capacities. Additionally, to the extent Plaintiff's claims against Defendants Hughes and Brown-Foiles are premised entirely on their supervisory roles within IDOC, rather than allegations of individual wrongdoing, such claims fail because *respondeat superior* liability is not recognized under Section 1983. *See Ashcroft v. Iqbal*, 556 US 662, 676 (2009); *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Finally, there are no allegations that Defendant Williams-Dixon, the president of Hand-N-Hand, is a state actor suable under Section 1983. Private individuals may act under color of law when they are engaged in a "public function" or perform conduct that is "fairly attributable to the state." *Moore v. Broady*, No. 10-CV-3250, 2010 WL 3125008, at *4 (E.D.N.Y. Aug. 6, 2010). But these exceptions are narrow, as the relevant question is not just whether the private entity is serving a public function, but "whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Id.* (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 842 (1982)). A private entity does not become a state actor merely by performing under a government contract. *Rendell–Baker*, 457 U.S. at 841. Moreover, numerous courts have found that the provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state. *See Veeder v. TRI-CAP*,

4

No. 17-cv-11690, 2020 WL 1867212, at *7-8 (E.D. Mich. Jan. 30, 2020), *report and recommendation adopted*, No. 17-cv-11690, 2020 WL 967481 (E.D. Mich. Feb. 28, 2020) (collecting cases finding no state action by entities that house parolees); *Byng v. Delta Recovery Servs., LLC*, No. 6:13-cv-733, 2013 WL 3897485, at *9 (N.D.N.Y. July 29, 2013), *aff'd*, 568 F. App'x 65 (2d Cir. 2014) (collecting cases finding that transitional housing providers were not state actors). For these reasons, Defendants IDOC, Hughes, Brown-Foiles, and Williams-Dixon are not proper defendants in this action based upon the current allegations.

There are also numerous problems with the claims alleged by Plaintiff. For example, to state a plausible claim of deliberate indifference under the Eighth Amendment, a plaintiff must allege facts indicating that officials knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) This means that to be held liable, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* Plaintiff makes no allegations that Defendants Brown-Foiles, Hughes, Deen, or Fanning had any knowledge of the conditions at Hand-N-Hand, and thus any Eighth Amendment claim against these defendants is not plausibly alleged.

Plaintiff has made allegations that Defendants Davis and Trejos were aware of sub-standard conditions at Hand-N-Hand. However, claims based on a failure to prevent harm ordinarily require allegations that the Plaintiff "is *incarcerated* under conditions posing a substantial risk of serious harm." *Id.* at 834 (1994). Although a parolee is subject to "many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). For these reasons, the Seventh Circuit has held that parole officials can be liable for deliberate indifference only in limited circumstances. *See Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018) (while parole officers may have no duty to provide parolee with medical care, they may be constitutionally obligated not to block such care); *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir 2015) (parolee stated a claim against parole officer who subjected her to restrictive conditions after the expiration of her parole term). The Court has been unable to find an analogous Seventh Circuit case where parole or state prison officials were held liable for the conditions in a private halfway house.

Additionally, Plaintiff has not alleged any facts indicating that he was prevented from seeking or obtaining alternative housing if he was displeased with the conditions at Hand-N-Hand Outreach. The state's affirmative duty to protect incarcerated inmates arises from their inability to care for themselves, which does not apply with equal force to parolees. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). If Plaintiff was not able to leave Hand-N-Hand or obtain other housing, he should make that clear in any amended complaint.

The Court observes, for the sake of completeness, that Plaintiff's limited allegations do not suggest that the conditions at Hand-N-Hand were so severe as to deny him the "minimal civilized measure of life's necessities." *Thomas v. Blackard*, 2 F.4th 716, 719–20 (7th Cir. 2021) (cleaned up). Rather, Plaintiff largely focuses on building code violations and alleged negligent

5

management of the transitional housing facility. A violation of state law is not grounds for a federal civil rights lawsuit. *Guarjardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). Nor is negligence. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (collecting cases).

To the extent Plaintiff attempts to raise a claim of retaliation based upon the revocation of Plaintiff's parole, any such claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which provides that a plaintiff alleging that his state conviction or sentence was unconstitutional may sue for damages under § 1983 only if his conviction or sentence has been reversed, expunged, or otherwise invalidated. *Heck*'s favorable-termination requirement applies to claims that parole was improperly revoked. *Courtney v. Butler*, 66 F.4th 1043, 1049–50 (7th Cir. 2023); *see Easterling v. Siarnicki*, 435 F. App'x 524, 526 (7th Cir. 2011) (unpublished) ("*Heck* applies to both a prisoner's original sentence and to reimprisonment upon revocation of parole."). Plaintiff does not allege that he has overturned the revocation of his parole, so any claims related to the revocation are *Heck*-barred.

Any claim that Defendant Davis failed to respond to Plaintiff's grievances about his living conditions, loss of employment, or retaliation also does not state a claim. *See Courtney v. Devore*, 595 F. App'x. 618, 620–21 (7th Cir. 2014) (unpublished) ("grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling" of those grievances states no claim).

To the extent that Plaintiff alleges that Defendants violated his rights through the ICRP agreement he signed, the Court does not discern any viable claim. Plaintiff contends that the "reintegration plan" failed to recognize his right to work toward his criminal appeal (*see* Doc. 16 at 15), but Plaintiff does not allege any facts indicating that Defendants violated his right to access the courts in regard to his criminal conviction. The Court takes judicial notice that Plaintiff is challenging the dismissal of his postconviction petition in that case, which was affirmed by the First District Appellate Court, with the Illinois Supreme Court recently allowing his appeal. *People v. Lynon*, 2025 IL App (1st) 231422-U, ¶¶ 1-2, *appeal allowed*, No. 132043, 2025 WL 3302021 (Ill. Nov. 26, 2025).

The Court also does not discern an equal protection claim based on Plaintiff's allegation that sex offender parolees do not have the same "housing safety standards" as other parolees or incarcerated prisoners. Sex offenders are not a suspect class. *Shaw v. Smith,* 206 Fed. Appx. 546, 548 (7th Cir. 2006) (applying rational basis review to Equal Protection case based upon status as a sex offender). To state a claim, then, Plaintiff must allege facts raising an inference that Defendants intentionally treated the plaintiff differently from others similarly situated and there was no rational basis for the difference in treatment. *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). A plaintiff must allege sufficient facts to overcome the presumption of rationality that applies to government classifications. *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir. 1992). Plaintiff has not done so here.

For all the foregoing reasons, Plaintiff's amended complaint is dismissed without prejudice for failure to state a federal claim upon which relief may be granted. In an abundance of caution, Plaintiff is given leave to submit a proposed second amended complaint consistent with this order by the date set forth above if he believes he can state a cognizable claim against a proper Defendant.

6

If he fails to do so, this case will be dismissed with prejudice for failure to state a federal claim.

Plaintiff must write both the case number and the judge's name on the second amended complaint, sign it, and return it to the Prisoner Correspondent. Plaintiff is cautioned that an amended pleading supersedes the prior complaints and must stand complete on its own. Therefore, all allegations must be set forth in the second amended complaint without reference to the prior complaints. Any exhibits Plaintiff wants the Court to consider in its threshold review of the second amended complaint also must be attached. Plaintiff is advised to keep a copy for his files.

The Clerk is directed to send Plaintiff a copy of this order and a blank amended complaint form.

Date: January 8, 2026

*April M Perry*
**United States District Judge**